# Folmar *v.* Curtis.

*Statutory Detinue for Hogs.*

1. *Animals running at large in city or town; ordinance providing for taking up, impounding, and sale.*—Where the charter of a municipal corporation confers on it power "to prevent stock of any kind from running at large in the public streets and alleys," an ordinance making it the duty of the town marshal to take up and impound all hogs found running at large within the corporate limits, and to sell them at public auction, after giving forty-eight hours notice by posting the same at the door of the post-office; allowing the owner to redeem them, at any time before a sale, by paying a reasonable fee for the taking up and the expense of feeding, and directing the net proceeds of sale to be paid into the municipal treasury, is a valid exercise of the police power, and not violative of any constitutional principle; and the ordinance is applicable to animals belonging to non-residents of the city or town, when found within the corporate limits.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by J. J. Curtis against R. H. Folmar, to recover a hog; and was commenced before a justice of the peace, on the 13th April, 1888. The case was removed into the Circuit Court by *certiorari*, and there submitted to the decision of the court without a jury. It was admitted that the hog had belonged to the plaintiff, and was still his property, unless the defendant had acquired a title by purchase at a sale made by the town marshal, after the animal had been taken up in the streets of Troy and impounded, under the provisions of a municipal ordinance, which is set out in the opinion of the court; and it was admitted, also, that the plaintiff did not reside within the corporate limits of the town at the time the animal was taken up. On these facts, the court rendered judgment for the plaintiff. The defendant excepted to this ruling, and here assigns the judgment as error.

GARDNER & WILEY, and PARKS & SON, for appellant, cited Horr & Bemis on Mun. Corporations, § 162; Dill. Mun. Corporations, § 345; Cooley's Const. Lim: 588; *Dunn v. County Comm'rs*, 85 Ala. 148; *Wilcox v. Hemming*, 58 Wisc. 144; *Shaw v. Kennedy*, Term R. N. C. 591.

[Folmar v. Curtis.]

M. N. CARLISLE, *contra*, cited *Zeigler v. S. & N. Railroad Co.*, 58 Ala. 594; *Donovan v. Vicksburg*, 29 Miss. 247; *Poppen v. Holmes*, 44 Ill. 362; *Griffin v. Wilcox*, 21 Ind. 370; 11 Mich. 147; 35 N. Y. 308; 13 N. Y. 419, 468; 10 Ohio, 32.

CLOPTON, J.—It is admitted that appellee, who brought the action, is not entitled to recover the hogs sued for, if the ordinance of the city of Troy, under which they were taken up, impounded and sold, is valid, and is applicable to stock running at large within the corporate limits, belonging to persons residing outside. It is conceded, that the charter gives the municipal authorities power to adopt the ordinance. It confers not only general authority to declare, prevent and remove nuisances, but also express power "to prevent stock of any kind from running at large in the public streets and alleys." The ordinance in question declares: It shall be the duty of the city marshal to take up and impound all hogs running at large in any portion of the city, and to sell the same at public auction at the city pound, if remaining therein, on Friday of each week, having first given forty-eight hours notice of the sale, with a description of the property, by posting the same at the post-office door in the city. If, before the sale, any animals are applied for by the owner, they shall be delivered to him, on the payment of the sum of fifty cents for each animal, and ten cents per head for each day they have been fed; and in the event of a sale, the proceeds, after deducting the fee for taking up and feeding, to be paid to the city treasurer; but no animal shall be sold within forty-eight hours after being taken up.

Power to adopt ordinances regulating the taking up and impounding of animals running at large in the highways, has been conferred on municipal corporations from time immemorial; and such ordinances have been so often considered and maintained, when reasonable and authorized, as proper police regulations, that the question of their validity should be regarded as beyond further discussion.—*Dunn v. Court of Revenue*, 85 Ala. 148. They are founded on public necessity—the protection of the public health, safety and comfort. An analysis of the ordinance in question shows, that it imposes no penalty or damages, beyond the reasonable expense of taking up, impounding and keeping, and provides proper notice of the sale. A few courts have questioned the power to authorize a forfeiture of the animal

without a judicial investigation; but the undoubted weight of authority supports ordinances similar to the one under consideration. The requirement of a judicial inquiry and determination before the animal running at large can be taken up and impounded, upon proper notice to the owner, would render such ordinances ineffectual, and any remedy in such case inadequate. If the owner will not take suitable means to prevent his own animals from running at large in the streets, the exercise of this police power by a summary proceeding is absolutely necessary to protect the public use of the highways. The ordinary remedies afforded by the law have been generally considered as sufficient to determine whether the animal is running at large in violation of the ordinance, and whether its provisions have been complied with. Without pursuing the consideration further, we cite the following authorities, which have upheld and justified similar ordinances as suitable, summary modes of protecting the public use of the streets.—*Wilson v. Hemming*, 58 Wis. 144; *Spitler v. Young*, 63 Mo. 42; *Gilchrist v. Schmidling*, 12 Kan. 263; *Friday v. Floyd*, 63 Ill. 50; *Whitfield v. Longest*, 6 Ired. 268; *McKee v. McKee*, 8 Mon. 433; *Gossekirk v. Campbell*, 4 Iowa, 296. Other authorities could be cited, but it is unnecessary.

It is contended further, that conceding the ordinance is valid so far as it affects the citizens, it does not operate upon the animals of those who reside without the corporate limits. Ordinances can not have an *extra-territorial* effect, and do not bind beyond the limits of authorized jurisdicton; but when persons, or the stock of persons, residing beyond, come within the local jurisdiction, they are liable for violation of the ordinances in the same manner as the inhabitants. Such regulations would be of little avail, if restricted in their operation to the stock of the inhabitants, and the animals of those residing without the corporate limits have the privilege to run at large in the streets *ad libitum*. This question has also been considered, and it has been held, that municipal ordinances operate upon all persons or animals coming within the corporate jurisdiction.—*Kennedy v. Snowden*, 1 McMul. (S. C.) 323; 1 Dill. Mun. Corp. § 355.

Reversed, and judgment here rendered for defendant in the Circuit Court, who is the appellant.

Reversed and rendered.